**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF OHIO**

**EASTERN DIVISON**

| | | |
|---|---|---|
| ALAN FRANCIS, | ) | CASE NO. 4:25-cv-01734-JJH |
| | ) | |
| Petitioner, | ) | JEFFREY J. HELMICK |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| STEPHEN REYNOLDS, | ) | REUBEN J. SHEPERD |
| | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

## I. Introduction

On August 12, 2025[1], Petitioner Alan Francis ("Francis") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF Doc. 1). On January 30, 2026, I was referred this case pursuant to Local Rule 72.2 for issuance of a report and recommended decision and issuance of any non-dispositive orders. (Non-document entry of Jan. 30, 2026). On March 3, 2026, Francis requested to amend his petition. (ECF Doc. 15, p. 1). And on April 14, 2026, Francis requested to add three additional grounds. (ECF Doc. 18). I granted Francis' request on April 27, 2026. (ECF Doc. 19). On May 28, 2026, Warden Stephen Reynolds[2] ("Respondent")

[1] Francis does not provide an affidavit with a date he placed his petition in the prison mail system. (See ECF Doc. 1, p. 5). However, a letter addressed to the Clerk of Courts is dated August 12, 2025, (ECF Doc. 1-7, p. 1), and the envelope is postmarked August 14, 2025 (ECF Doc. 1-8). I therefore use August 12, 2025 as the date Francis filed his petition by placing in the prison mail system.

[2] On April 27, 2026, the Court granted Francis' motion to correct the name of the Respondent from the State of Ohio to Stephen Reynolds. (ECF Doc. 19).

filed a Motion to Dismiss Case as Time-Barred. (ECF Doc. 20). Francis did not file his Traverse despite being granted two extensions to do so and being told that no further extensions would be granted. (*See* non-document entries of June 26, 2026 and July 15, 2026).

## II. Factual Background

The Ohio Eleventh District Court of Appeals set forth the facts on direct appeal. These factual findings are presumed correct unless Francis rebuts this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

> {¶ 2} On December 6, 2005, appellant was indicted for two counts of aggravated murder, in violation of R.C. 2903.01, with death penalty specifications, pursuant to R.C. 2929.04, and three-year firearm specifications, pursuant to R.C. 2941.145; one count of aggravated burglary, a felony of the first degree, in violation of R.C. 2911.11, with a firearm specification; one count of aggravated robbery, a felony of the first degree, in violation of R.C. 2911.01, with a firearm specification; one count of robbery, a felony of the second degree, in violation of R.C. 2911.02; three counts of aggravated robbery, felonies of the first degree, each with a firearm specification; and one count of having a weapon while under disability, a felony of the third degree, in violation of R.C. 2923.13.
>
> {¶ 3} Thereafter, appellant pled not guilty and, on January 4, 2006, filed a motion to suppress evidence. On December 5, 2006, appellant filed a supplemental brief in support of his motion. Pursuant to these filings, appellant sought to exclude oral statements made by him to police on November 23, 2005 and November 28, 2005. The court held four hearings on the motion between March 22, 2007 and June 29, 2007.
>
> {¶ 4} On April 10, 2008, the trial court denied the motion to suppress, finding that, prior to making statements to police on November 23, 2005 and on November 28, 2005, appellant was advised of his *Miranda* rights and that he voluntarily waived them.
>
> {¶ 5} On September 19, 2008, appellant filed a motion to reconsider the trial court's ruling regarding his November 23, 2005 statement, challenging his capacity to waive his *Miranda* rights based on his alleged ingestion of crack cocaine on the day of his arrest. Following hearings conducted on December 16, 2008 and December 19, 2008, the trial court issued a second judgment entry, dated December 29, 2008, denying appellant's motion to suppress. The court again found that on November 23, 2005, appellant voluntarily waived his *Miranda* rights.

{¶ 6} Following the trial court's ruling, appellant entered a plea bargain with the state, pursuant to which he agreed to plead no contest to the 9–count indictment, including the firearm specifications, in exchange for the dismissal of the death specifications.

{¶ 7} Subsequently, the trial court found appellant guilty of the charges, and sentenced him to 30 years to life for the aggravated murder convictions. This sentence was to be served concurrently with appellant's sentence to 37 years in prison for three unrelated robberies and the disability charge, and a separate three-year term of imprisonment for the merged firearm specifications. The effective sentence imposed on appellant was 40 years to life, and was imposed pursuant to the parties' plea bargain.

{¶ 8} While this case was pending on appeal, at appellant's request, this court remanded the matter to the trial court to include in the record certain documents from the Niles Municipal Court. This court also granted appellee's request to remand the matter for the trial court to correct a typographical error in its December 29, 2008 judgment entry denying appellant's motion to suppress. The trial court corrected this entry and re-filed the record.

{¶ 9} On November 23, 2005, at about 5:30 a.m., Krystal Melius was working behind the counter at the Niles Fuel Mart when appellant entered the store. He went behind the counter, put a gun to Krystal's side, and said, "This is a stick up. Give me the money." Although she initially refused, Ms. Melius eventually opened the cash drawer. Appellant reached in and grabbed cash. He said if she moved, he would "shoot to kill," and he walked out the door.

{¶ 10} Later that same day, at around 3:00 p.m., while Ms. Melius was at the cash register, she saw appellant in the line of customers. She quickly left the register and told the manager that the man who had robbed her that morning was in line. The manager called the police. Shortly thereafter, appellant and a second male left the store, entered a car, and left the area. Upon arrival of the police, Ms. Melius gave them appellant's description. He was arrested at a residence in nearby Weathersfield Township at about 3:30 p.m. Ms. Melius identified appellant from a photo array.

{¶ 11} Niles Police Chief Bruce Simeone, who was familiar with appellant from prior dealings with him, was present at his arrest. Chief Simeone testified that, at that time, appellant did not appear to be under the influence of drugs or alcohol. He testified appellant appeared to understand what was happening, and was able to follow the directions of police on the scene "perfectly."

{¶ 12} While appellant was being booked for the Fuel Mart robbery, Niles Detective Ron Wright found an emergency identification card for John Paul Crocker on appellant. Detective Wright was aware that Mr. Crocker had been murdered in Weathersfield two days earlier, and advised Chief Simeone that this

card was found on appellant. Chief Simeone advised Weathersfield Police Chief Joseph Consiglio of this discovery.

{¶ 13} At about 5:00 p.m., Chief Consiglio met Chief Simeone at the Niles Police Department in order to interview appellant. They met with him in an interview room. Chief Consiglio told appellant he was investigating a homicide and wanted to question him about his possession of the victim's identification.

{¶ 14} At about 5:15 p.m., Chief Consiglio advised appellant of his *Miranda* rights, using a form that outlines these rights. He read the *Miranda* rights form aloud to appellant, while appellant read along from a copy Chief Consiglio provided to him.

{¶ 15} The waiver form consists of two sections. The first section, entitled "Your Constitutional Rights," advises the defendant of each of the *Miranda* rights. Next to each of these rights is a line for the defendant to initial after he indicates he understands each right. The second section of the form, entitled "Waiver of Rights," is comprised of a paragraph in which the defendant confirms that he has read and understands his rights, and that he waives his rights and wishes to speak to police without counsel. At the end of this section, there is a line for the defendant to initial. At the bottom of the form there is a place for witnesses and the defendant to sign.

{¶ 16} Following the form, Chief Consiglio advised appellant of each of his rights, and, after advising him of each right, appellant initialed each right, indicating he understood it. While the chief was reading the waiver-of-rights section, appellant said, "I would like to have an attorney." Chief Consiglio said, "Fine. This interview is terminated. I can't ask you any more questions. We are done here." Appellant continued reading the form, and, after about one minute, he started to initial the waiver section. Chief Consiglio said, "Wait a minute. You have invoked your rights to an attorney. You don't have to initial your Wavier of Rights." Appellant then said, "Well, I'll talk to you guys." Chief Consiglio said: "[Y]ou are initiating on your own accord, I have not asked you to do this. I have made no promises or threats. Was [there] coercion used here to get you to talk to me?" Appellant said, "No, I'll talk to you guys. I want to talk to you guys."

{¶ 17} After appellant initialed the waiver section, Chief Consiglio read that section to him. Appellant then signed the bottom of the form. Chief Simeone also testified that Chief Consiglio read the waiver section to appellant.

{¶ 18} At the hearing held following appellant's motion for reconsideration, Chief Consiglio testified that he orally re-Mirandized appellant. He identified the notes taken by Captain Michael Naples, who was present during the interview, which confirm that at 1804, i.e., at 6:04 p.m., about 45 minutes after the interview began, Chief Consiglio re-Mirandized appellant.

{¶ 19} Chief Consiglio asked appellant if he could record the interview. Appellant said he would "rather not be video-taped or do an audio based on [sic] his friends

have told him how we would use that in a court of law." Chief Simeone testified, "He said if we recorded it, he would not talk to us." Chief Consiglio questioned appellant for about two hours regarding the Crocker homicide, during which appellant made incriminating statements concerning his involvement. Mr. Crocker, an elderly, disabled Weathersfield resident, had been beaten, stabbed, and shot to death in his own home with his own gun. Thereafter, appellant stole his gun and identification.

{¶ 20} Both Chief Consiglio and Chief Simeone testified that appellant appeared to understand all of their questions. They both testified that appellant was "coherent" and did not appear to be under the influence of alcohol or narcotics. Chief Consiglio testified that he asked appellant if he was under the influence of drugs or alcohol, and he said he was not. Chief Simeone testified that he has arrested appellant in the past, and had previously given him the *Miranda* warnings. Chief Consiglio testified that nothing was promised to appellant in exchange for his statement, and that no coercion was used against him. Both chiefs testified that appellant ate about five sandwiches and drank a soda during the questioning. Chief Simeone said that appellant did not appear to be tired and his speech was not slurred. Both chiefs testified that once appellant signed the waiver, he never asked for an attorney and never refused to answer any questions. Both chiefs testified that appellant's statement was made voluntarily.

{¶ 21} On Wednesday, November 23, 2005, appellant was charged with the Niles robberies and remained in jail during the Thanksgiving weekend. Then, on Monday morning, November 28, 2005, appellant was arraigned at the Niles Municipal court. The charges were read to him, bond was set, but appellant did not enter a plea. The case was set for preliminary hearing, but that hearing did not proceed as appellant was subsequently indicted.

{¶ 22} On November 28, 2005, shortly before his arraignment, Niles Police Detectives James Robbins and Daniel Adkins interviewed appellant at the Niles Police Department. Both detectives testified that appellant did not appear to be under the influence of drugs or alcohol. Detective Robbins testified that, prior to meeting with the detectives, appellant had breakfast and coffee.

{¶ 23} Detective Robbins told appellant they were investigating the robberies that had occurred in Niles the previous week. He asked appellant if they could record the interview and appellant had no objection to it. Consequently, Detective Robbins recorded the interview. Detective Robbins advised appellant of his *Miranda* rights, using the same form described above. Appellant initialed each right and the waiver section, and also signed the form. Both detectives testified that, during the interview, appellant never objected to answering any questions. Appellant denied any involvement in the Niles robberies. After admitting some involvement in the homicide case, appellant asked for a lawyer. At that point Detective Robbins terminated the interview.

> {¶ 24} Appellant appeals the trial court's judgment entries denying his motion to suppress.

(ECF Doc. 20-1, pp. 332-57; *State v. Francis*, 2010 WL 2349113, **1-4 (Ohio App. Ct. June 11, 2010) ("*Francis I*")) .

## III. Procedural History

### A. State Court Conviction

On December 6, 2025, Francis was indicted with the following charges: two counts of aggravated murder in violation of R.C. § 2903.01, each carried death penalty specifications pursuant to R.C. § 2929.04, and three-year firearm specifications pursuant to R.C. § 2941.145; one count of aggravated burglary, a first degree felony in violation of R.C. § 2911.11, with a firearm specification; one count of aggravated robbery, a first degree felony in violation of R.C. § 2911.01, with a firearm specification; one count of robbery, a second degree felony in violation of R.C. § 2911.02; three counts of aggravated robbery, first degree felonies in violation of R.C. § 2911.01, each with a firearm specification; and one count of having a weapon while under disability, a third degree felony in violation of R.C. § 2923.13. (ECF Doc. 21-1, pp. 6-17).

Francis, represented by counsel, entered a not guilty plea on December 8, 2005. (*Id.* at p. 18).

On January 4, 2006, Francis, through counsel, filed a Motion to Suppress arguing that police officers obtained statements from him in violation of his Constitutional rights. (*Id.* at pp. 27-30). Francis, through counsel, supplemented his motion. (*Id.* at pp. 31-42). The state of Ohio opposed both motions. (*Id.* at pp. 24-26; 43-55).

Following a hearing, the state trial court withheld ruling on the motion to suppress to allow for testimony and arguments. (*Id.* at pp. 58, 63).[3] Francis filed an additional supplement to his motion to suppress. (*Id.* at pp. 66-94). The trial court held an evidentiary hearing on Francis' motion and on April 10, 2008 denied the motion to suppress his statements to police. (*Id.* at p. 100). The court concluded that Francis "was properly informed of his Miranda rights, that he understood his rights and voluntarily, knowingly and intelligently waived his rights before giving a statement." (*Id.* at pp. 101; 95-103).

Francis, pro se, filed a motion to reopen the suppression proceedings. (*Id.* at pp. 104-22). On September 19, 2008, Francis, through counsel, filed a motion to suppress evidence seized following his execution of a consent to search premises form during his initial interrogation. (*Id.* at pp. 123-31). The same day, Francis, through counsel, also filed a motion for reconsideration of the court's decision denying his request to suppress statements made to the police. (*Id.* at p. 132-33). Both Francis and the state of Ohio filed proposed findings of fact and conclusions of law. (*Id.* at pp. 134-41; 142-50).

Following hearings in December 2008, the trial court found that Francis acted freely, knowingly, and voluntarily both in waving his *Miranda* rights and consenting to search, overruling the motions to suppress. (*Id.* at pp. 151-58).

In exchange for the removal of the death penalty specifications, Francis entered a no contest plea to a revised indictment on January 22, 2009. (*Id* at pp. 160-69). The court accepted his no contest plea. (*Id.* at p. 169). On February 3, 2009, Francis was sentenced to an aggregate prison term of 40 years to life. (*Id.* at pp. 170-73).

---

[3] The trial court's journal entry appears to rule on approximately 108 motions and/or requests made by Francis. The discussion provided above only details the motions related to the issues on habeas review. (ECF Doc. 20-1, pp. 56-65).

### B. Direct Appeal

On February 24, 2009, Francis appealed his conviction and sentence to Ohio's Eleventh District Court of Appeals. (*Id.* at pp. 174-81). On appeal, Francis raised the following assignments of error:

> THE TRIAL COURT ERRED AS A MATTER OF LAW BY OVERRULING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS THE FRUITS OF THE UNCONSTITUT1ONAL INTERVIEW OF APPELLANT ON NOVEMBER 28, 2005, IN VIOLATION OF THE SIXTH AMENDMENT.
>
> THE TRIAL COURT ERRED AS A MATTER OF LAW BY OVERRULING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS THE FRUITS OF THE UNCONSTITUTIONAL INTERVIEW OF APPELLANT ON NOVEMBER 23, 2005 IN VIOLATION OF THE FIFTH AMENDMENT AND MIRANDA V. ARIZONA (1966), 384 U.S. 436.
>
> THE TRIAL COURT ERRED AS A MATTER OF LAW BY OVERRULING DEFENDANT-APPELANT'S MOTION TO SUPPRESS THE FRUITS OF THE NOVEMBER 23, 2005 INTRVIEW BASED ON THE FACT THAT APPELLANT LACKED VOLUNTARY CAPACITY IN VIOLATION OF THE FIFTH AMENDMENT.
>
> DEFENDANT-APPELLANT WAS DENID THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE 1 OF THE OHIO CONSTITUTTON.

(*Id.* at pp. 182-241).

The state of Ohio filed a motion for limited remand, asking the state appellate court to remand the case to the trial court for issuance of a nunc pro tunc entry to correct the judgment entry denying Francis' motion to suppress. (*Id.* at pp. 242-43). The appellate court granted the motion to remand on September 2, 2009. (*Id.* at pp. 244-45).

### C. Remand Proceedings

The trial court filed a supplemental journal entry correcting its misstatements on September 14, 2009. (*Id.* at pp. 247-56). In the corrected entry, the trial court concluded that

Francis acted freely, knowingly, and voluntarily both in waving his *Miranda* rights and consenting to search, overruling motions to suppress. (*Id.*; *Francis I*, 2010 WL 2349113).

**D. Post-Remand Appeal**

On September 29, 2009, the state of Ohio filed its appellate brief. (*Id.* at pp. 257-318). Francis filed a reply-brief on October 7, 2009. (*Id.* at pp. 319-31). On June 14, 2010, the court of appeals overruled Francis' assignments of error and affirmed his conviction. (*Id.* at pp. 332-57; 358).

On September 10, 2010, Francis, pro se, filed an application to reopen his direct appeal. (*Id.* at pp. 364-752). In his application, Francis raised the following proposed assignments of error:

> INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL - For failure to raise on appeal the clear 'Diminished Capacity' of Appellant to waive Miranda.
>
> INEFFECTIVEASSISTANCE OF APPELLATE COUNSEL - Perjury.
>
> INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL - Off the Record.
>
> INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL - For failure to effectively review the record prior to filing any Appellant's Brief.
>
> INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL - For failure to raise on appeal, Ineffective Assistance of Trial Counsel for defective advise when instructing Appellant to plead no contest to the 3 separate charges of Aggravated Robbery.
>
> INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL - For failure to file Transcript from Suppression Hearings.
>
> INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL - For failure to raise on appeal, Ineffective Assistance of Counsel when Defense Counsel refused to represent Appellant upon his filing of Affidavit of Bias and Prejudice, in the Disqualification action of the Trial Judge in his case. TO WIT: Forced to file Pro Se and denied certification, from Counsel of Record [Notary] See O.R.C. 2701.031

> INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL - For failure to raise on appeal deprivation of Due Process when Trial Court did not provide a 3 judge panel pursuant to R.C. 2945.06 [See Appendix M]
>
> INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL - For failure to raise on appeal, Ineffective Assistance of Trial Counsel for defective advise when instructing Appellant to plead no contest to an F2 Robbery when the 'show up' identification was unduly suggestive.

(*Id.* at pp. 369-78). The state of Ohio filed a brief in opposition on September 21, 2010. (*Id.* at pp. 753-89). Francis filed a motion for leave to file a response instanter. (*Id.* at pp. 790-91; 792-96). The appellate court denied Francis' application to reopen on November 23, 2010. (*Id.* at pp. 797-805).

Francis appealed the denial of both his direct appeal and application to reopen to the Ohio Supreme Court on January 6, 2011. (*Id.* at pp. 806-07). In his memorandum in support of jurisdiction, Francis did not raise formal propositions of law, but argued "due process violations" and "ineffective assistance of counsel." (*Id.* at pp. 808-54). The state of Ohio opposed jurisdiction. (*Id.* at pp. 855-66). On April 6, 2011 the Ohio Supreme Court denied Francis leave to appeal and dismissed the case. (*Id.* at p. 867; *State v. Francis*, 944 N.E.2d 695 (Table) Apr. 6, 2011("*Francis II*")).

**E. Post-Conviction Proceedings**

On February 4, 2009, Francis filed a pro se motion seeking leave to file a motion to withdraw his no contest plea. (*Id.* at pp. 359-61). On March 17, 2009, Francis' motion for leave was granted and his motion to withdraw was denied. (*Id.* at pp. 362-63).

On September 20, 2011, Francis filed a pro se motion to "alter, amend, or vacate a void judgment" with the trial court. (*Id.* at pp. 868-73). The state of Ohio opposed the motion. (*Id.* at pp. 874-76). Francis filed a reply-brief. (*Id.* at pp. 877-80). On June 26, 2013, the state trial court denied Francis' motion. (*Id.* at p. 881).

Francis appealed the denial to the state appellate court on July 26, 2013. (*Id.* at pp. 882-84).

On March 17, 2016, Francis, pro se, filed a motion to vacate void plea with the trial court. (*Id.* at pp. 885-97). Francis filed a motion for leave to supplement on October 13, 2023. (*Id.* at pp. 898-910). The trial court denied the motion on October 18, 2023. (*Id.* at p. 911). Francis appealed the denial on November 9, 2023. (*Id.* at pp. 912-17). In his appellate brief, Francis raised the following assignment of error: "The Trial Court Erred by Accepting Appellant's No-Contest Plea Without Informing Appellant of the Effect of a No-Contest Plea as Required by Crim.R. 11 (B)(2)." (*Id.* at pp. 918-33). The state of Ohio filed a responsive brief. (*Id.* at pp. 934-44). Francis filed a reply brief. (*Id.* at pp. 945-53). On May 6, 2024, the state appellate court affirmed the trial court's judgment. (*Id.* at pp. 954-58; *State v. Francis*, 2024 WL 1991436 (May 6, 2024) ("*Francis III*")).

Francis appealed to the Ohio Supreme Court on June 5, 2024. (*Id.* at pp. 959-60). In his memorandum in support of jurisdiction, Francis raised the following proposition of law:

> Because Appellant filed his motion to withdraw plea of no contest prior to the Court's decision in *State v. Harper*, 160 Ohio St. 3d 480, 2020 Ohio-2913, 159 N.E.3d 248, the doctrine of res judicata was not applicable to bar review of the claims presented therein, as the no contest plea was void ab initio.

(*Id.* at pp. 961-80). The state of Ohio opposed jurisdiction. (*Id.* at pp. 981-94). The Ohio Supreme Court declined jurisdiction on August 6, 2024. (*Id.* at pp. 995; *State v. Francis*, 239 N.E.3d 398 (Table).

## IV. Federal Habeas Corpus Petition

On April 27, 2026, I granted Francis' motions (ECF Docs. 15; 18) to amend his petition. (ECF Doc. 19). In doing so, I allowed Francis to clarify the grounds for relief that he wished to raise which are as follows[4]:

> [GROUND ONE:] [INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL].
>
> [Supporting Facts:] Trial counsel knew or should have known that the trial court completely failed to comply with its Statutorily mandated duty, pursuant to Criminal rule 11(C)(2)(b) and 11(B)(2), to advise the Defendant of the 'Effect Of The Plea' as Sentencing Transcripts clearly reflect, whereas Trial Counsel stood by knowingly allowed it to happen. Had Defendant known he was admitting the "TRUTH" to anything alleged in the indictment, he would not have accepted such a plea and insisted on going to trial to prove his actual innocence.
>
> [GROUND TWO:] [INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL].
>
> [Supporting Facts:] Trial counsel knew or should have known that the handwritten notes of a third-party Police Officer, that were not read nor signed to adopt by the Defendant as his actual spoken words, were not "STATEMENTS" as a matter of law and should never have been raised to be suppressed as such to the absolute prejudice of their client's best interests.
>
> [GROUND THREE:] [INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL].
>
> [Supporting Facts:] Trial counsel knew or should have known the Trial Court abused its discretion by Ordering the admission of unauthenticated, unread, and unsigned by the alleged speaker for adoption, handwritten notes of a third-party police officer, into evidence as the material statements of the defendant while, by the ineffective assistance of trial counsel, those counselor's did not contest it nor did the appellate counsel. Raised in 26(b) and denied.
>
> [GROUND FOUR:] [INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL].
>
> [Supporting Facts:] Trial Counsel knew or should have known that every piece of alleged evidence implicating Defendant in Three Aggravated Robberies having been found inadmissible for trial by the Trial Court should have alleviated the

[4] I note that in the Motion to Dismiss (ECF Doc. 20), Respondent lists approximately 16 grounds for relief, after piecing information together from Francis' many filings. Francis reiterates these 16 grounds in his Motion to Compel. (ECF Doc. 26). However, in my Order granting Francis' Motions to Amend, I state that his motions are granted "to include the 12 listed grounds for relief." (ECF Doc. 19). Accordingly, only the 12 grounds permitted in that Order will be discussed.

listing of those same robberies into the Amended indictment yet allowed their client to proceed to plead out thereto.

[GROUND FIVE:] [INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL].

[Supporting Facts:] Trial counsel refused Defendant's adamant insistence of taking the stand to be heard during Suppression Proceedings and/or trial, should it have gone there, as is reflected in the numerous correspondence he'd written to his Trial Counsel the majority of which he has within his immediate possession.

[GROUND SIX:] [INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL – PERJURED TESTIMONY].

[Supporting Facts:] The Trial Counselors, on the fourth day for jury selection proceedings, advised the defendant, in a back room of the Court Room and, in breach of Lawyer/client confidentiality, in the presence of Two Deputy Sheriffs, that they were, "…..not going to raise that (blatantly elicited, by state and defense attorneys, perjured testimony which is clearly apparent within the Record) or any other issue for your defense that will discredit the Judge or the two Chiefs of Police" leaving Defendant with absolutely NO FAITH in his Counsel to represent his best interests as he had, for over Three (3) years at the time, insisted on going to trial to prove his actual innocence, forcing him to accept a worse plea offer than any other offer made within those years.

[GROUND SEVEN:] [INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL].

[Supporting Facts:] Trial counsel knew and advocated the prosecutorial misconduct by knowingly using PERJURED TESTIMONY of the Chiefs of Police to threaten and force a plea acceptance from the Defendant. The perjured testimony is clearly apparent within the certified Court Record.

[GROUND EIGHT:] [INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL].

[Supporting Facts]: Trial Counsel allowed Defendant to be denied his inalienable right to pre-sentence allocution. In fact, Trial Counsel, clearly against any reasonable trial strategy for the Defendant's best interests advised Defendant to not say anything to the Judge when asserting his actual innocence was the most appropriate trial strategy under the circumstances.

[GROUND NINE:] [INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL].

[Supporting Facts:] Trial Counsel allowed the Defendant to be convicted of Two Murders, which the Court clearly asserted on the Record would not happen, for the death of one individual.

[GROUND TEN:] [INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL].

> [Supporting Facts:] Trial Counsel completely failed to perform Reasonably adequate investigation Never once forming nor presenting, in a Thirty-Eight months time period, a theory for defense except, against Defendant's adamant unmovable stance on his actual innocence, a "Not guilty By Reason of Insanity defense" except one Counselor who'd been pursuing a "PATTERN OF CORRUPT PRACTICES" DEFENSE until he "mysteriously" died (murdered) on a toilet because of such pursuit of said "line of defense". His compilations to date "could not be located" nor would his partner nor replacement agree to pursue the same. All/Any evidence for the defense being circumstantial being found through other hearsay being Fruits of a poisonous tree. No record of adequate investigation exists.
>
> [GROUND ELEVEN:] [INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL].
>
> [Supporting Facts:] Trial Counsel failed when they did not move to dismiss all charges once the Court suppressed the 'PROBABLE CAUSE to Arrest's photo array positive identification evidence, made by the same Four victims of Three robberies who thereafter testified under oath that they, in Fact, Never saw the Face of their assailant, as having been "unduly suggestive photo array when it was/is clearly and convincingly apparent to God and the whole World that by only overreachingly corrupt coercive police effort would Four different people who say they'd never seen their assailant's Face choose the same Face.
>
> [GROUND TWELVE:] [Judicial/Prosecutorial Misconduct]
>
> [Supporting Facts:] With direct reference to arguments No. (2.) (3.) and (6.). The Court's Trial Judge along with the State's Attorney Knowingly abused discretion by allowing the Defense Attorney-introduced 'ORAL STATEMENTS GIVEN TO THE POLICE' To survive suppression and by allowing knowingly and purposefully elicited perjured Testimonies from the Chiefs of Police to become STATE'S EVIDENCE and tactically used to coerce the Defendant into accepting a plea offer for more prison time than offered in the previous Six to Eight offers made.

(ECF Docs. 15, pp. 2-4; 18, pp. 2-4).

## V. Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, PL 104-132, April 24, 1996, 110 Stat 1214, 110 Stat. 1214 ("AEDPA"), apply to Francis' petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). "As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170 (2011). This is

so because "[s]tate courts are adequate forums for the vindication of federal rights" and AEDPA thus acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). As such, AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted).

Under 28 U.S.C. § 2254, federal courts may "entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States'" and in most instances, federal courts may not grant habeas relief "unless . . . the applicant has exhausted state remedies." *Cullen*, 563 U.S. at 181, quoting 28 U.S.C. §§ 2254(a), (b), (c). Further, if an application for writ of habeas corpus involves a claim that was "adjudicated on the merits in State court proceedings," the application

> shall not be granted . . . unless the adjudication of the claim
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181; *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007). The burden of proof rests with the petitioner. *Cullen*, 563 U.S. at 181.

First, clearly established federal law for purposes of AEDPA review includes "the holdings, as opposed to dicta, of [U.S. Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is contrary to U.S. Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Court on a question of law or if the

state court decides a case differently than the Court despite both cases having materially indistinguishable facts. *Williams*, 529 U.S. at 405; *White v. Mitchell*, 431 F.3d 517, 523 (6th Cir. 2005), cert. denied, 549 U.S. 1047 (2006). However, a state court does not act contrary to clearly established federal law where U.S. Supreme Court precedent is ambiguous or otherwise unavailable. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state court decision is an unreasonable application of Supreme Court precedent where the state court's adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000), cert. denied, 531 U.S. 1089 (2001). Under § 2254(d)(2), a state court's factual determination will stand unless it is objectively unreasonable in light of the evidence presented in state court. *Harrington*, 562 U.S. at 100. "[A] federal habeas court may not grant relief simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 365.

Next, "a determination of a factual issue made by a State court shall be presumed to be correct. [Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2554(e)(1). And, as the U.S. Supreme Court has repeated, "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion . . . ." *Burt*, 571 U.S. at 18. Federal courts must also defer to a state court's judgment on issues of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, (1986); *Engle v. Isaac*, 456 U.S. 107, 128-29 (1982).

In all, federal habeas corpus relief is a "guard against extreme malfunctions in the state criminal justice systems," and is different in kind from the relief available in direct appeal.

*Harrington*, 562 U.S. at 102-03; *see also Brown v. Davenport*, 596 U.S. 118, 133 (2022) (internal quotation omitted). Thus, to obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

When a properly presented federal constitutional claim was not adjudicated on the merits in the state courts, the reviewing federal court must apply the pre-AEDPA standard, reviewing de novo questions of law and mixed questions of law and fact. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007) ("When the state court has not assessed the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply.").

**A. Procedural Barriers**

Before coming to federal court, a state habeas petitioner must overcome certain procedural barriers, including exhaustion of state remedies and procedural default. *See Daniels v. United States*, 532 U.S. 374, 381 (2001). A federal court sitting in habeas review may review claims that were evaluated on the merits by the state court. But claims that were not evaluated by a state court, either because they were never fully presented to the state court (i.e., state court remedies were unexhausted) or because they were not properly presented to the state court (i.e., they are procedurally defaulted) are not available for federal habeas corpus review. *Bonnell v. Mitchel,* 301 F. Supp. 2d 698, 722 (N.D. Ohio 2004), *aff'd sub nom. Bonnell v. Mitchell*, 212 F. App'x 517 (6th Cir. 2007).

**B. Exhaustion**

A petitioner must first give the state courts a "*fair*" opportunity to act on his claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (emphasis in original). For a claim to have

been fairly presented, the factual and legal basis of the claim asserted by the petitioner must have been raised at each and every stage of state review. *Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). It is not enough for the claim raised in state court to be "somewhat similar" to the one raised in the habeas petition or implicate the same facts; the state court must have been called upon to apply the legal principles of the claim now presented to the federal courts. *Jalowiec v. Bradshaw*, 657 F.3d 293, 304 (6th Cir. 2011).

The petitioner also must have presented their "claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law." *Williams v. Anderson*, 460 F.3d 789, 807 (6th Cir. 2006) (quotation marks omitted). In this Circuit, this can be done in one of four ways:

> (1) reliance upon federal cases employing constitutional analysis;
>
> (2) reliance upon state cases employing federal constitutional analysis;
>
> (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or
>
> (4) alleging facts well within the mainstream of constitutional law.

*McMeans*, 228 F.3d at 681 (paragraph breaks added).

Failure to exhaust occurs where state court remedies are still "available at the time of the federal petition." *Williams*, 460 F.3d at 806. This failure to exhaust can also lead to a petitioner procedurally defaulting his claims. If the petitioner has not fully utilized his state remedies and has no legal mechanism by which to do so now, the claim he failed to present is procedurally defaulted, and this Court cannot act on the claim either. *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Williams*, 460 F.3d at 809.

### C. Procedural Default

The procedural default doctrine limits federal review if the petitioner has failed to follow the state's procedural requirements for presenting his or her claim in state court. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991). This doctrine flows from the insight that courts must have the authority to insist that "defendants present their arguments on time and according to established procedures." *Benton v. Brewer*, 942 F.3d 305, 307 (6th Cir. 2019). Thus, a federal habeas court will not consider a habeas petition if "the last state-court judgment denying relief on the claim rests on a procedural state-law ground that is 'independent of the federal question and is adequate to support the judgement.'" *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013) (quotation marks omitted).

This Circuit consults a four-part test to determine whether a petitioner has procedurally defaulted a claim. A petitioner procedurally defaults a claim if: (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforced the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Because the procedural-default bar to federal habeas review is harsh, courts have created safety-valves to permit review in limited circumstances. A petitioner can obtain review of procedurally defaulted claims if he or she shows: (1) "cause," i.e. that some external factor kept him from complying with the state rule or fairly presenting his claim; and (2) "prejudice," i.e. that, assuming the petitioner's constitutional claim has merit, there is a reasonable probability that a different verdict would have resulted if the alleged constitutional violation hadn't occurred. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Wogenstahl v. Mitchell*, 668 F.3d 307, 337

(6th Cir. 2012). A petitioner can also obtain review of a procedurally defaulted claim if the procedurally defaulted claim is based on new evidence that the petitioner was factually innocent of the crime of conviction. *See Coleman*, 501 U.S. at 750 ("fundamental miscarriage of justice" exception to procedural default); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim would establish that the petitioner was "actually innocent."). But "[A]ctual[] innocen[ce]" means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To overcome procedural default, an actual innocence claim must be supported by "new reliable evidence . . . that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

## VI. Discussion

Respondent argues in its Motion to Dismiss that Francis' Petition was untimely filed. (ECF Doc. 20). In an unrelated motion to expand the record, Francis contends "[a]lthough the Petition was untimely filed, Petitioner can demonstrate (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing, and therefore, he is entitled to equitable tolling." (ECF Doc. 28, p. 2). Thus, before turning to Francis' grounds for relief, I must first determine whether his petition was timely filed.

### A. 28 U.S.C. § 2244(d)(1)

AEDPA provides that a: "1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). The statute of limitations period runs from the latest of four possible dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D). The United States Supreme Court has held that "direct review" for purposes of § 2241(d)(1)(A) includes seeking certiorari. *Penry v. Lynaugh*, 492 U.S. 302, 314 (1989). Therefore, the statute of limitations includes the 90 days that the petitioner has to seek certiorari whether or not such review is sought. *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 459-60 (6th Cir. 2012) (citing *Gonzalez v. Thaler*, 56 U.S. 134 (2012)).

Under Section 2244(d)(1)(A), Francis had one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" to file his petition. Here, Francis' convictions and sentence were affirmed by Ohio's Eleventh District Court of Appeals on June 14, 2010. (ECF Doc. 20-1, pp. 332-57; *Francis I*, 2010 WL 2349113). He then had 45 days to file an appeal to the Ohio Supreme Court. *See* S.Ct.Prac.R. 6.01(A)(1). Francis did not file a timely appeal to the Ohio Supreme Court, however he gets the benefit of that time as if he did. (ECF Doc. 20-1, p. 867).[5] Getting the benefit of those 45 days, Francis had until July 29, 2010 to file his petition. The record before the Court does not indicate that Francis sought certiorari with the United States Supreme Court, but similarly to the handling of his failure to timely file to the Ohio Supreme Court, including the 90 days he had to seek such review, Francis' conviction became final on October 27, 2010.

[5] Francis attempted to appeal from the denial of both his direct appeal and his application to re-open his direct appeal on January 6, 2011. (ECF Doc. 21-1, pp. 806-07). However, the Ohio Supreme Court denied him leave to appeal, thereby treating it as untimely filed. (*Id.* at p. 867).

Therefore, pursuant to Section 2244(d)(1)(A), Francis had until October 27, 2011 to file his federal habeas petition.

Francis' petition was filed with this Court on August 12, 2025. (ECF Doc 1). Thus, absent statutory or equitable tolling, Francis' petition is time barred.

**B. 28 U.S.C. § 2244(d)(2)**

AEDPA allows for statutory tolling under Section 2244(d)(2) when it states: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2); *see also Holbrook v. Curtin*, 833 F.3d 612, 615 (6th Cir. 2016). Statutory tolling extends "until the application has achieved final resolution through the State's post-conviction procedures," *Carey v. Saffold*, 536 U.S. 214, 220 (2002), or "until the expiration of the period for further State court review, whether or not the petitioner actually seeks such review." *Holbrook*, 833 F.3d at 615, quoting *Whitcomb v. Smith*, 23 F. App'x 271, 273 (6th Cir. 2001). However, even where a petitioner has properly filed a state postconviction motion and tolls AEDPA's statute of limitations, statutory tolling under 28 U.S.C. § 2244(d)(2) does not serve to revive the one-year limitations period. *Vroman v. Brigano*, 346 F.3d 589, 601 (6th Cir. 2003). Rather, statutory tolling only pauses a clock that has not yet expired. *Id.* And the statute of limitations is not tolled during the filing of a subsequent petition for certiorari to the United States Supreme Court because that period is within the federal system and is "not a part of a 'State's post-conviction procedures.'" *Lawrence v. Florida*, 549 U.S. 327, 337 (2007) (quoting 28 U.S.C. § 2244(d)(2)).

Francis filed his application to reopen his direct appeal on September 10, 2010. (ECF Doc. 20-1, pp. 364-752). This date has no effect on AEDPA's statute of limitations because

Francis' conviction did not become final until October 27, 2010. The state appellate court denied the application on November 23, 2010. (*Id.* at pp. 797-805). Francis then had 45 days to file an appeal with the Ohio Supreme Court. *See* S.Ct.Prac.R. 6.01(A)(1). Francis filed an appeal to the Ohio Supreme Court on January 6, 2011 and that appeal was denied on April 6, 2011. (*Id.* at pp. 806-07; 867). Therefore, the AEDPA statute of limitations started running once the appellate court released its decision until Francis filed his appeal to the Ohio Supreme Court, 44 days later. This made Francis' habeas petition due by February 21, 2012.

Francis also filed a number of post-conviction proceedings with the state trial court. He filed a February 4, 2009 motion seeking to withdraw his guilty plea which was denied on March 17, 2009. (*Id.* at pp. 359-61; 362-63). This had no bearing on the statute of limitations because it occurred before his conviction became final.

The statute of limitations ran from April 6, 2011 until Francis filed another post-conviction motion on September 20, 2011 – or for another 167 days. (*Id.* at pp. 868-73). The state trial court denied the motion on June 26, 2013. (*Id.* at pp. 882-84). The Return of Writ includes a notice of appeal from this denial filed by Francis on July 26, 2013, marking another 30 days elapsed. (*Id.* at pp. 882-84). The Return of Writ provides no indication of what happened after the filing of this notice of appeal.

In his motion to dismiss, Respondent claims "Francis failed to prosecute this appeal and provide additional required pleadings to proceed. Therefore, no further action occurred. At this time, only 167 days remained of Francis's AEDPA one-year statute of limitations." (ECF Doc. 20, p. 12). While a review of the state court docket reveals that nothing occurred with respect to the appeal after Francis filed the notice of appeal, I cannot confidently say that this amounted to

an error on Francis' behalf for failing to prosecute.[6] *See* Docket 2005 CR 00867 State of Ohio -vs- Francis, Alan M JMS, https://courts.co.trumbull.oh.us/eservices/searchresults.page?x=drzZkoqLm7yz-BAzVgg-xu5yBs8J1DHqXLYd5ZfAVNMyV5*77QcIZGmDBLpOMlXzOkMj*kj1U5bavi0YNpsZbQ. Ohio Rule of Appellate Procedure 4 states: "An appeal of right from a trial court to a court of appeals may be taken only by filing a notice of appeal with the clerk of the trial court within the time allowed by Rule 4. The appellant must attach to the notice of appeal a time-stamped copy of the judgment or order from which the appeal is taken." *See* Ohio App. R. 4. On its face, the notice of appeal Francis filed appears to follow this mandate. He filed the notice of appeal and attached the judgement entry from which he was appealing. (*See* ECF Doc. 20-1, pp. 882-84). The notice of appeal was filed with the Trumbull County Clerk of Courts for the common pleas court and was date stamped. (*Id.*). Notwithstanding the filing of the notice of appeal with the clerk, the notice of appeal does not have a date stamp indicating receipt by the Eleventh District Court of Appeals. (*Compare* ECF Doc. 20-1, pp. 882 (notice of appeal including only a date stamp from the Trumbull County common pleas court) and ECF Doc. 20-1, p. 912 (including a date stamp from both the Trumbull County appellate court)). In addition, a review of the appellate court's online docket further indicates that nothing further happened with the case after Francis filed his notice of appeal. There is no corresponding case or case number. Thus, it appears as though the case was never adjudicated.

While Respondent claims that it was Francis who failed to prosecute his appeal, upon review of the available information, it appears as if he did not have the opportunity to do so

---

[6] This Court is permitted to take judicial notice of a state court's docket. *See Kirk v. Ivey*, 2020 WL 349662, at *1 (N.D. Ohio, 2020) (citing *Ghaster v. City of Rocky River*, 913 F. Supp. 2d 443, 455 (N.D. Ohio 2012) (explaining that a federal court may take judicial notice of an Ohio state court case docket if the plaintiffs refer to the Ohio state court case in their complaint)).

because it was not received by the court of appeals, no case was opened, no case number was assigned, and the case was therefore not disposed of properly. Based on the foregoing information, I cannot conclude that Francis' AEDPA statute of limitations has run as it appears he still has an open appeal from 2013 that has yet to be adjudicated.

Generally speaking, a federal habeas court will not review a question of federal law if a state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment, absent a showing of cause and prejudice to excuse the default. *See Coleman v. Thompson*, 501 U.S. 722, (1991). A state court procedural default, however, is not a jurisdictional bar to a review of a habeas petition on the merits. *See Trest v. Cain*, 522 U.S. 87, (1997). That is, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, (1997)). It may be more economical for the habeas court to simply review the merits of the petitioner's claims, "for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. Similarly, where the statute of limitations poses complicated issues, it may be more efficient for the Court to resolve the merits of the petition against the Petitioner. *See, e.g., Johnson v. Mackie,* 2014 WL 1418678 (E.D. Mich. April 14, 2014).

In the present case, I find it more efficient to proceed directly to the merits of Francis' substantive claims and accordingly bypass discussion of any procedural barriers. On this basis, I recommend that Respondent's Motion to Dismiss be denied. After reviewing Francis' substantive claims, I further recommend that his petition be denied as without merit.

In Grounds 1 through 11, Francis raises various reasons why he believes his trial counsel was ineffective, including failing to object to evidentiary rulings, not calling Francis as a witness at the suppression hearing, failing to object to charges in the indictment. I find each of the arguments made in Grounds 1 through 11 to be too conclusory to warrant habeas relief. Under 28 U.S.C. § 2254, federal courts may "entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States.'" *Cullen*, 563 U.S. at 181, (quoting 28 U.S.C. § 2254(a)). Furthermore, Rule 2(c) of the Rules Governing Section 2254 Cases requires a petition to "specify all the grounds for relief" and "state the facts supporting each ground." Here, Francis does not allege in any of his grounds for relief that he is being held in violation of the Constitution or a law of the United States. Although Francis argues the various ways he believes his trial counsel was ineffective, he does not explain how any of the alleged happenings violated his Constitutional rights or the law.

Because "conclusory and perfunctory" allegations of ineffective assistance, like the ones raised here, "are insufficient to warrant habeas relief," *Wogenstahl v. Mitchell*, 668 F.3d 307, 335-36 (6th Cir. 2012), I recommend that the Court find that Mitchell is not entitled to a habeas on Grounds 1 through 11. *See also Blackledge v. Allison*, 431 U.S. 63, 75 (1977) (Stating that a habeas corpus petition containing only "vague (or) conclusory" allegations is subject to dismissal (quoting *Machibroda v. United States*, 368 U.S. 487, (1962))).

I find the same is true with respect to Francis' twelfth and final ground for relief. In that ground, Francis baldly asserts judicial and prosecutorial misconduct when they allowed allegedly perjured testimony at the suppression hearing.

As was true with the other eleven grounds, Francis does not argue how the alleged activity violated the Constitution or Federal law and instead makes conclusory statements. I accordingly recommend that Ground 12 be denied.

## VII. Francis' Motion to Compel Respondent to Provide Transcript

Finally, pending before the Court is a motion filed by Francis requesting that the Respondent be ordered to "provide him with a complete transcript of proceedings held in the state-court." (ECF Doc. 26, p. 1). Specifically, he requests the seven or eight volumes of transcripts filed in his state court proceedings and an "examination of the trial transcripts should be carefully undertaken" by the Court. (*Id.* at p. 6). Pursuant to Rule 5 of the Rules Governing Section 2254 Petitions, respondents are required to provide courts with the transcripts and documents available that "the respondent considers relevant." Rule 5 of the Rules Governing Section 2254 Cases, 28 U.S.C. foll. § 2254. Habeas Corpus Rule 7 empowers the court to "direct the parties to expand the record by submitting additional materials relating to the petition" on its own motion or a motion of a party. Rule 7 of Rules Governing Section 2254 Cases, 28 U.S.C. foll. § 2254. Having been able to adequately address the issues above, I find a review of the transcripts unnecessary to resolve the issues raised on habeas review. I therefore deny Francis' Motion to Compel.

## VIII. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(1)(A), this Court will grant a certificate of appealability ("COA") for an issue raised in a Section 2254 habeas petition only if the petitioner has made a substantial showing of the denial of a federal constitutional right. *Cunningham v. Shoop*, 817 F. App'x 223, 224 (6th Cir. 2020). A petitioner satisfies this standard by demonstrating that reasonable jurists "could disagree with the district court's resolution of his constitutional claims

or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (internal quotation marks omitted); see also *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

If the District Court adopts my recommendations above, I further recommend that no COA issue in this case. Reasonable jurists would not disagree with the Court proceeding to deny of Francis' claims because they were argued in a conclusory and vague manner which did not provide the Court the framework for how the state court violated the Constitution or federal law, and where the AEDPA statute of limitations issue involved a complicated application of state law.

## IX. Recommendation

For the foregoing reasons, I deny Francis' Motion to Compel. (ECF Doc. 26). I recommend that the Respondent's Motion to Dismiss be denied. (ECF Doc. 20). I further recommend that all of Francis' grounds for relief be denied as without merit. I also recommend that no certificate of appealability be issued.

Dated: October 14, 2026

REUBEN J. SHEPERD
UNITED STATES MAGISTRATE JUDGE

---

**OBJECTIONS**

**<u>Objections, Review, and Appeal</u>**

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge. Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28

U.S.C.§ 636(b)(1); Local Rule 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

* * *

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) quoting *Howard*. The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).